IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARL D. DEKLE, *et al.*, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0069-WS-C |
| ) | |
| GLOBAL DIGITAL SOLUTIONS, ) | |
| INC., *et al.*, ) | |
| ) | |
|     Defendants. ) | |

**ORDER**

This matter comes before the Court on defendants' Renewed Motion to Transfer Venue, or Alternatively Motion to Reconsider (doc. 30). The Motion has been briefed and is now ripe.

**I.   Denial of Defendants' Original Motion to Transfer Venue.**

On June 5, 2015, the undersigned entered an Order (doc. 29) that, *inter alia*, denied defendants' motion for a discretionary transfer of venue to the U.S. District Court for the Middle District of Florida. The applicable statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The June 5 Order determined that venue would be proper in the proposed transferee district, but that movants had failed to meet their burden of establishing that the Middle District of Florida would be a more convenient forum than the Southern District of Alabama. The June 5 Order summarized the rationale underpinning that conclusion as follows:

> "Plaintiffs' choice of this forum is entitled to deference. Plaintiff Dekle's health is such that, as a practical matter, transferring this case to the Middle District of Florida may preclude him from attending any hearings or the trial. Plaintiffs have made a showing that substantial operative facts occurred in this District. And the underlying Equity Purchase Agreement provides on its face that Alabama law governs. These factors all weigh against a § 1404(a) transfer. On the other side of the scale, defendants have not shown that retaining this forum will work undue hardship on them or any witnesses. By all appearances, a Southern District of Alabama forum will not meaningfully impair defendants' ability to marshal and present their documents, evidence and witnesses at trial. To be sure, this forum is

> less convenient for defendants' officers and employees (and perhaps other witnesses) than the Middle District of Florida would be. Upon careful consideration of the totality of the circumstances, however, ***and especially given that a transfer would likely foreclose plaintiff Dekle from being able to attend any hearings, court proceedings or trial***, the Court concludes that movants have not met their burden of showing that a balancing of the convenience of the parties and the interests of justice favors transfer in this case."

(Doc. 29, at 10-11 (emphasis added).)

As the above excerpt indicates, the Court considered the totality of the circumstances and weighed the § 1404(a) factors articulated in *Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005).[1] At the time of the June 5 Order, the Court was particularly swayed by the grave illness of plaintiff Brian A. Dekle, a resident of this judicial district who was undergoing a rigorous regimen of medical care for pancreatic cancer, including more than 50 chemotherapy treatments. (*See* doc. 29, at 8.) Given the fragility of Brian Dekle's health and the near certainty that he would be medically precluded from travel to the Middle District of Florida to attend and participate in court proceedings, the undersigned was of the opinion that a transfer for the convenience of the parties and witnesses would not serve the interests of justice, because any incremental benefit of such a transfer to defendants would be more than offset by the enormous inconvenience to plaintiff Brian Dekle. Of course, "a transfer that would only shift inconvenience from the defendant to the plaintiff does not outweigh the plaintiff's choice for Section 1404(a) purposes." *S.E.C. v. Lauer*, 478 Fed.Appx. 550, 554 (11th Cir. Apr. 19, 2012). The undersigned also determined that movants had not made a substantial showing that witnesses would be inconvenienced if the trial were held here. Based on these and other considerations, the Court denied defendants' request for a § 1404(a) transfer of venue to the Middle District of Florida.[2]

---

[1] Such factors include "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel*, 430 F.3d at 1135 n.1.

[2] The pivotal importance of Brian Dekle's health to the June 5 Order's denial of a discretionary transfer of venue is underscored by the following passage: "The Court will not (Continued)

## II.     Changed Circumstances / Rebalancing the § 1404(a) Factors.

Unfortunately, Brian Dekle's medical situation was even direr than the Court appreciated when the June 5 Order was drafted. A Suggestion of Death (doc. 31) filed on June 10, 2015 confirmed that Brian A. Dekle had passed away on June 2, 2015. Ultimately, the decedent's brother, Carl D. Dekle, as Personal Representative of the Estate of Brian A. Dekle, was substituted as a party plaintiff pursuant to Rule 25(a), Fed.R.Civ.P. One of the many implications of these developments was that a critical aspect of the § 1404(a) analysis – Brian Dekle's severe illness and inability to travel to the Middle District of Florida – is no longer in play. Furthermore, the substituted plaintiff (Carl Dekle) has no such medical restrictions on his ability to travel. Seizing on these circumstances, defendants filed a Renewed Motion to Transfer Venue, in which they asked again for a § 1404(a) transfer based on Brian Dekle's death and presented supplemental evidence of inconvenience to witnesses and potential prejudice to defendants.[3] To resolve this Renewed Motion, the Court will rebalance the § 1404(a) factors to ascertain whether defendants have met their burden of establishing that the Middle District of Florida is more convenient than the plaintiffs' chosen forum.

---

grant a transfer under § 1404(a) to make the proceedings marginally more convenient for defendants, while making them extremely inconvenient for plaintiffs, particularly given plaintiff Dekle's serious medical condition." (Doc. 29, at 10.)

[3]     This filing is styled "Renewed Motion to Transfer Venue, or Alternatively Motion to Reconsider." Insofar as defendants seek reconsideration of the June 5 Order, that motion is **denied**. All of the facts on which the Renewed Motion rests were known by, or at least available to, defendants prior to entry of the June 5 Order. It is well settled that a motion to reconsider is not properly used to submit facts that the movant could have presented earlier, but did not. *See, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment") (citation omitted); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider … do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation."). As a Motion to Reconsider, defendants' filing is not well taken. In its discretion, however, the Court will allow defendants to renew their Motion to Transfer Venue under the unique circumstances presented here. Accordingly, the Renewed Motion to Transfer will be considered on the merits.

The biggest change to the § 1404(a) analysis performed in the June 5 Order is that, as to the convenience of the parties, that factor is now neutral as between this forum and the Middle District of Florida. While plaintiffs object that Carl Dekle "has a full-time occupation headquartered in Mobile" (doc. 34, at 5), the same may be said of defendants and their representatives' employment in the Middle District of Florida (doc. 39, at 7). As things now stand, it does not appear that the Middle District of Florida would be any more inconvenient for plaintiffs than this forum is for defendants. Thus, although convenience of the parties was the single most critical consideration driving the denial of transfer in the June 5 Order, it no longer weighs heavily (or at all) in favor of the Southern District of Alabama. Each venue would inflict a modicum of inconvenience (but no more) on one party or the other. Stated differently, we no longer face a situation where transferring venue would effectively destroy one plaintiff's ability to attend court proceedings.

The other significant modification to the analysis wrought by the Renewed Motion concerns nonparty witnesses. The June 5 Order rejected nonparty witness concerns as a significant factor favoring transfer because defendants had "identified no key witnesses who will be adversely affected by conducting proceedings in this forum, nor have they provided specifics as to the nature of such witnesses' expected testimony or their reticence or refusal to travel." (Doc. 29, at 9 n.8.) Defendants have now shored up these factual shortcomings with considerable detail concerning out-of-state witnesses.[4] In particular, they show that Plaintiffs' Initial Disclosures listed only three nonparty witnesses: Jennifer Carroll, David Loppert, and Kenneth Lemoine. (Doc. 30, Exh. A at 2.) All of these individuals reside in Florida, and are believed to reside in the Middle or Southern District of Florida. (Loppert Decl. (doc. 30, Exh. C), ¶ 2; doc. 30, ¶ 6.) Defendants also point to their own Initial Disclosures, which listed the following nonparty witnesses: Wallace "Wally" Bailey, Harold P. "Skip" Lee, J. Kenny Crow, Jr., Loppert, Ross Trevino, Carroll, Brenda Anderson, Jerry Gomolski, Paul Phenix, and Roland Lussier. (Doc. 30, Exh. B at 3-4.)[5] All of these witnesses – with the exception of Crow – are

---

[4]  Defendants' assertion in one of their briefs that "the convenience and availability of non-witnesses favors the Middle District of Florida" (doc. 39, at 3) is presumably a typographical error, with defendants intending to reference "non-party witnesses."

[5]  Certain of these witnesses may be managers / officers / agents of defendants Global Digital Solutions, Inc. or North American Custom Specialty Vehicles, Inc. Thus, several
(Continued)

Florida residents, and all are believed to reside in the Middle or Southern District of Florida. (Loppert Decl., ¶ 2; doc. 30, ¶ 6.) Thus, other than named parties, the Initial Disclosures reveal a tally of 10 witnesses who live in central or southern Florida, and just one who resides in this judicial district.

Of course, the law is clear that "[w]hen weighing the convenience of the witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witness may provide." *Osgood v. Discount Auto Parts, LLC*, 981 F. Supp.2d 1259, 1265 (S.D. Fla. 2013) (citations omitted); *see also Goodwyn, Mills & Cawood, Inc.v . Black Swamp, Inc.*, 956 F. Supp.2d 1323, 1328 (M.D. Ala. 2012) ("resolution of the convenience-of-witnesses issue should not be a battle between the parties of the lengths of witness lists"). Looking at the documents submitted by the parties to date, the Court readily concludes that out-of-state witnesses are expected to provide highly material, and indeed critical, testimony in this case. For example, witness Bailey is alleged in the Second Amended Complaint to be "a key longtime employee of the Company" that defendants "ran off" to the detriment of NACSV (doc. 33, ¶ 30), which plays directly into plaintiffs' breach of contract claim at Count Two. Witness Lussier is the CEO and President of Communication Laboratories, Inc., a competitor of NACSV with knowledge of the asset purchases that lie at the heart of plaintiffs' specific performance claim at Count One. (Doc. 30, Exh. B, at 4; Loppert Decl., ¶ 4; doc. 39, at 4.) Many of the other out-of-state witnesses are alleged to have information concerning Brian Dekle's operation of NACSV (directly relevant to Counts One and Two) and/or the underlying transaction through which GDSI purchased Dekle's company (important to all counts). (*See* doc. 30, Exh. B at 2-4.) By contrast, the only in-state nonparty witness identified by the parties is Kenny Crow, a Mobile-based accountant who participated in a

---

of them are likely closely aligned with the named corporate defendants; however, others are not, but instead appear to be either rank-and-file employees of defendants, former employees of defendants (who may or may not have left on good terms), or individuals affiliated with defendants' competitors. The exact breakdown of which witnesses fall within which categories is not entirely clear from the parties' submissions. For purposes of the balancing test contemplated by this Order, however, it suffices to note that certain of the enumerated witnesses fall within defendants' control, while certain others do not.

conference call during which defendants allegedly made certain misrepresentations relevant to the securities fraud causes of action (Counts Three and Four). (Doc. 34, ¶ 10.) Based on the information furnished by the parties to date, the convenience of witnesses factor weighs heavily in favor of transferring this action to the Middle District of Florida.[6]

Relatedly, defendants' Renewed Motion makes a persuasive showing that maintaining venue in this forum would render it difficult or impossible to secure the appearance of certain important witnesses who reside in the Middle District of Florida. In particular, defendants indicate that witnesses Lussier and Bailey are expected to be hostile (or at least uncooperative) because of their involvement with a direct competitor of NACSV and, in Bailey's case, departure from NACSV's employment under circumstances that may not have been amicable. (Doc. 30, at 3-4; doc. 39, at 5.) Because these witnesses live outside the subpoena power of this District Court, see Rule 45(c), Fed.R.Civ.P., this Court could not compel Lussier and Bailey to appear for a court proceeding in this forum. By contrast, plaintiffs do not suggest that their one in-state witness (Crow) would be unwilling or unable to travel to the Middle District of Florida to testify, such that compulsory process would appear unnecessary to secure his attendance.[7] This factor also favors transfer.

As the foregoing discussion demonstrates, the § 1404(a) convenience / interests of justice analysis is markedly different now than it was when the June 5 Order was entered. Because of plaintiff Brian Dekle's passing, the "convenience of the parties" factor has swung from overwhelmingly (and, indeed, decisively) favoring denial of transfer to being neutral. Because of defendants' supplemental submission (not to mention the Counterclaim), the "convenience of

---

[6] This conclusion is reinforced by the Counterclaim (doc. 53) filed earlier this week by defendant North American Custom Specialty Vehicles, Inc., which alleges that Brian Dekle helped nonparty witnesses Lussier and Bailey to set up a competing company in Brevard County, Florida, including misappropriation of trade secrets and transfer of company assets for below market value. These events are alleged to have occurred in the Middle District of Florida, and the accompanying claims will likely turn on the testimony of witnesses (including uncooperative witnesses) found primarily or exclusively in that District.

[7] There is also no hint of acrimony between Crow and plaintiffs in this case. To the contrary, Crow apparently was the accountant for Brian Dekle and John Ramsay in connection with the sale of Old NACSV to GDSI. At this time, the Court has no information and no reason to believe that Crow would be unfavorably disposed to a request from plaintiffs that he testify live at a trial in the Middle District of Florida.

the witnesses" factor has shifted from neutral to substantially favoring transfer to the Middle District of Florida. The "availability of process" factor likewise supports transfer, given the circumstances of witnesses Lussier and Bailey. With respect to the remaining § 1404(a) factors, the breakdown is as follows: (i) the location of documents and ease of access to sources of proof modestly favors the Middle District of Florida, inasmuch as most documents and exhibits appear to be found in that forum;[8] (ii) the locus of operative facts is neutral, as substantial operative facts occurred both in this forum and in the proposed transferee district; (iii) the relative means of the parties is a neutral factor, as no party suggests (much less presents evidence) that conducting these proceedings in one forum or the other would work a substantial financial hardship on him or it; (iv) the forum's familiarity with governing law is also a neutral factor;[9] (v)

---

[8] This factor receives only limited weight because there appear to be no significant impediments to defendants' ability to ship the relevant documents, records and logs to this judicial district without exorbitant cost or inconvenience. To be sure, defendants state in passing that they "may choose to utilize as a demonstrative exhibit" a mobile command center sold by NACSV to a company called ComLab in Melbourne, Florida, and that ComLab is unwilling to allow that inventory to be transported here. (Doc. 30, at 4; doc. 39, at 6.) Defendants' potential desire to use a mobile command center in Florida as a demonstrative exhibit at trial has little impact on the § 1404(a) analysis. In the first place, defendants do not explain why inspection of the mobile command center would be relevant to the claims and issues joined herein. And in the second place, defendants do not indicate why photographs, video recordings, or witness testimony concerning the appearance and condition of said mobile command center would not suffice for purposes of this litigation (*i.e.*, they offer no reason why inspection of the thing itself – as opposed to images, recordings, or testimony about that thing – might be needed to make whatever points defendants are contemplating at trial). In short, the location of (and inability to relocate) the subject vehicle appear to be of little consequence for the triable claims and issues presented here, or for the accompanying § 1404(a) analysis.

[9] Plaintiffs' securities fraud claims appear to be governed by federal law. This is so even for Count Four, which alleges a violation of the Alabama Securities Act. That statute has generally been construed by reference to its federal counterpart in all relevant respects. *See, e.g., Buffo v. Graddick*, 742 F.2d 592, 595 (11th Cir. 1984) ("the Alabama statute at issue here has generally been construed in accordance with federal precedent governing Rule 10b-5"). As for plaintiffs' specific performance / breach of contract claims (Counts One and Two), they are asserted under Alabama law; however, the parties have identified (and the Court is aware of) no state-specific nuances that might affect application of general common-law principles to those claims here. Thus, even though the underlying Equity Purchase Agreement provides on its face that Alabama law governs, there do not appear to be any complexities or idiosyncrasies specific to Alabama law that might render it more efficient or otherwise preferable for this action to be litigated and tried in this District, rather than the Middle District of Florida.

the plaintiffs' choice of forum weighs against transfer; and (vi) trial efficiency and the interests of justice are neutral, as both this district and the Middle District of Florida have an interest in deciding this controversy and there is no reason to believe that trial would proceed more efficiently or fairly in one forum or the other.

"District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296, 1312 (S.D. Ala. 2012) (citations omitted). Nonetheless, the Eleventh Circuit has directed that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Moreover, the law is clear that "the burden is on the movant to establish that the suggested forum is more convenient." *Continental Motors*, 882 F. Supp.2d at 1312-13 (citation omitted). Under the specific circumstances presented here, however, defendants have met their burden of establishing that the Middle District of Florida would be more convenient than the Southern District of Alabama, and that the factors favoring transfer clearly outweigh plaintiffs' choice of this forum.

Specifically, the convenience of nonparty witnesses is often viewed as the most important factor in the § 1404(a) analysis. *See, e.g., Carroll v. Texas Instruments, Inc.*, 910 F. Supp.2d 1331, 1334 (M.D. Ala. 2012) (convenience of nonparty witnesses is "sometimes dubbed the single most important factor in determining whether the transfer of venue is proper").[10] That factor weighs heavily in favor of transfer in this case. All witnesses identified to date, with the exception of plaintiffs themselves and their accountant, are Florida residents who apparently live in the Middle District of Florida or the Southern District of Florida. Multiple nonparty witnesses whose testimony will likely be critical for both parties' cases at trial reside in (or in reasonably close proximity to) the Middle District of Florida. The same is not true of the Southern District

---

[10] *See also Internap Corp. v. Noction Inc.*, --- F. Supp.3d ----, 2015 WL 4459035, *2 (N.D. Ga. June 29, 2015) ("Witness convenience is one of the most important factors in evaluating a motion to transfer …, with a focus on key witnesses.") (citation omitted); *Osgood*, 981 F. Supp.2d at 1264 ("The convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted.") (citation omitted); *Insuracorp, Inc. v. American Fidelity Assur. Co.*, 914 F. Supp. 504, 506 (M.D. Ala. 1996) ("The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses.").

of Alabama.  Under any reasonable viewing of the facts before the Court, the Middle District of Florida will be a far more convenient forum for witnesses (and, particularly, crucial nonparty witnesses) than the Southern District of Alabama would be.  This consideration is buttressed by facts showing that key nonparty witnesses include multiple persons who are likely to be hostile and/or uncooperative because of their history and/or competitive relationship with defendants.  If this action remains in the Southern District of Alabama, those witnesses cannot be subpoenaed for trial.  By contrast, if the case were transferred to the Middle District of Florida, they could be.  The vast majority of documents, records and other evidence appear to be located in the proposed transferee forum.  Virtually all other § 1404(a) factors are neutral between the proposed transferee and transferor venues.

When the Court considers the totality of the circumstances, it becomes readily apparent that, for the convenience of parties and witnesses, in the interest of justice, venue should be transferred to the U.S. District Court for the Middle District of Florida.  Nearly all the witnesses and evidence are located in that forum.  The only known potentially uncooperative witnesses (whose testimony is likely to be of central importance to both sides' claims) may be subpoenaed to attend a trial in the Middle District of Florida, but not here.  There would appear to be a substantial net benefit to parties and witnesses alike to fix the locus of these proceedings where the witnesses and evidence are, where the subject business was operated and headquartered, and where most of the relevant activities took place, rather than in a venue roughly 500 miles away that is convenient to no one other than the plaintiffs and their accountant.[11]  Such a transfer

---

[11] In so concluding, the Court remains cognizant of the admonition that a § 1404 transfer is not appropriate where its effect would be merely to shift the inconvenience from one party to the other party.  *See, e.g., Rice v. PetEdge, Inc.*, 975 F. Supp.2d 1364, 1374 (N.D. Ga. 2013) ("A desire to shift the inconveniences of litigation onto plaintiff is not a valid basis for a transfer under § 1404(a)."); *Continental Motors*, 882 F. Supp.2d at 1314 n.25 ("To transfer venue to Mississippi would … merely shift the inconvenience from JA to Continental.  This is not a viable reason for a § 1404(a) transfer."); *Burger King Corp. v. Thomas*, 755 F. Supp. 1026, 1030 (S.D. Fla. 1991) ("transfer of venue in this case is improper since it would merely shift inconvenience from defendant to plaintiff, resulting in an equitable standoff").  The requested transfer in this case would not merely shift inconvenience from defendants to plaintiffs; rather, it would also substantially promote the convenience of witnesses, facilitate court-ordered appearance of those witnesses at trial if necessary, and eliminate logistical inconvenience and expense associated with the transportation and production of witnesses, documents, records and other exhibits.

would be fully consistent with, and in no way contrary to, the interests of justice.  Under these circumstances – and particularly given that accommodating the medical condition of Brian Dekle is, regrettably, no longer a consideration and that defendants have supplemented their previous showing to demonstrate that witness convenience supports a transfer – the Court will exercise its discretion in favor of transferring this action to the Middle District of Florida for the convenience of parties and witnesses, in the interest of justice.

### III.  Conclusion.

For all of the foregoing reasons, defendants' Renewed Motion to Transfer Venue (doc. 30) is **granted**.  This action is hereby **transferred** to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1404(a), for further proceedings.  The Clerk of Court is directed to take the necessary steps to effectuate the transfer.

DONE and ORDERED this 30th day of September, 2015.

s/ WILLIAM H. STEELE  
CHIEF UNITED STATES DISTRICT JUDGE